**In The United States District Court**
**For The Southern District of Ohio**
**Eastern Division**

**Libertarian Party of Ohio,**

      **Plaintiff,**

  **vs.**                      **Case No. 2:08-cv-555**

**Jennifer Brunner,**            **Judge Sargus**

      **Defendant.**

**Defendant Secretary of State Jennifer Brunner's**
**Memorandum Contra Plaintiff's Motion For Preliminary Injunction**

## I.    Introduction

When dealing with issues of ballot access, it is important for the State to balance the appropriate desire of new political parties to come into existence against the need to maintain order on the ballot. Just as we cannot have a meaningful democracy if new ideas and new political parties are barred, so too we cannot have a meaningful democracy if a ballot becomes so unruly by simply allowing any party desiring to field candidates to do so.

Secretary of State Brunner recognized these competing interests when she issued Directive 2007-09 in response to the Sixth Circuit's decision in *Libertarian Party v. Blackwell*. After the Sixth Circuit struck down Ohio's previous requirement that a new political party file its petitions within 120 days of an election and the Ohio General Assembly failed to pass any new laws to regulate the situation, Secretary Brunner exercised her authority under Ohio law. She shorted the period of time before the primary when a new political party needed to submit its petitions and cut the signature requirement by 50%. Thus, Directive 2007-09 constitutionally

requires any new political party to show that it enjoys a modicum of support in Ohio prior to gaining access to the ballot.

## II.     Argument

### A.     Ohio's Ballot Access Requirements

Under Ohio law, neither ballot access nor recognition as a political party is permanent. Rather, a political party is "any group of voters that, at the most recent regular state election, polled for its candidate for governor in the state or nominees for presidential electors at least five per cent of the entire vote cast for that office."  RC 3517.01(A)(1).  In addition, Ohio law had previously provided that a political party can come into existence if it filed a petition signed by "qualified electors in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election" within 120 days of a primary election.  *Id.* After a political party achieves ballot access, it will retain ballot access so long as its gubernatorial candidate or its presidential electors receive at least 5% of the vote in a four year election cycle.  If any currently recognized political party fails to garner the minimum threshold of 5% of the vote or if a new political party desires to come into existence in Ohio, it must file the same petition with the Secretary within the timeframe established.

In *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), the Court of Appeals held that Ohio's combined requirement that new political parties file their petition within 120 days of the primary election and nominate their candidates by primary are unconstitutional.  After the Ohio General Assembly failed to act in order to provide a mechanism for new political parties to achieve ballot access in Ohio, Secretary of State Brunner issued Directive 2007-09.  The Secretary, pursuant to her authority as the State's chief elections official, determined to grant ballot recognition to any new political party if it filed valid signatures from

2

qualified electors equal to 0.5% of the total vote cast for governor in 2006 within 100 days of the primary election.  Similarly, a presidential candidate who is the nominee of a party which is not legally recognized in Ohio likewise can file petitions in the same amount within 80 days of the general election.  Such a filing will entitle the candidate to have a party identifier next to his name on the presidential ballot.[1]

### B.    The Sixth Circuit's Decision in *Libertarian Party v. Blackwell*.

The Sixth Circuit had previously ruled that Ohio's previous ballot access law was unconstitutional as it relates to new parties in presidential election years.  *Libertarian Party*, 462 F.3d at 595.  The Court found that Ohio's combination of having a filing date 120 days prior to the March primary and requiring new political parties to nominate their candidates via primary in March was unconstitutional.  "Our inquiry is not whether each law individually creates an impermissible burden but rather whether the combined effect of the applicable election regulations creates an unconstitutional burden on First Amendment rights."  *Id.* at 586. The Court determined that early deadlines require minor parties to recruit supporters at a time when the population was not politically energized, requiring 30,000 people to sign a petition more than a year in advance of a general election, and limiting the ability of new political parties to respond to issues that might arise later in the campaign combine to make Ohio's previous 120 day filing requirement unconstitutional.  *Id.* at 586-87.

---

[1]  Based upon this alternative, it appears that the claims of the Libertarian Party's joint presidential candidate are not yet ripe since he can submit 20,114 signatures by August 18, 2008.

C.      **Directive 2007-09 constitutionally regulates party ballot access in Ohio.**

The legal test for ballot access regulations is well known.  States "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Every election law or regulation imposes some burden upon the voter.  *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  This is true if the regulation at issue concerns registration, the qualifications of electors, the selection of candidates, or the voting process itself.  *Id. citing Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Subjecting every election regulation to strict scrutiny, "would tie the hands of the States seeking to assure that elections are operated equitably and efficiently."  *Id.*  Therefore, a State election regulation that creates some barriers to the election process does not automatically trigger a strict scrutiny approach.  *Id.* at 433-34 *citing Bullock v. Carter*, 405 U.S. 134, 143 (1972).  Instead, the Supreme Court has found that a flexible standard must apply in cases challenging State election laws.  The court

> must weight 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Id.* at 434 (*quoting Anderson*, 460 U.S. at 789).

Based upon this standard, if a State law or regulation "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."  *Id. quoting Anderson*, 460 U.S. at 788.  Furthermore, any party seeking to challenge a State's reasonable and nondiscriminatory regulatory interest bears a heavy constitutional burden. *Schrader v. Blackwell*, 241 F.3d 783, 790-91 (6th Cir. 2001).

4

1. **The Plaintiffs will not suffer a severe restriction upon their rights if they have to file their petition within 100 days of Ohio's primary election.**

Ohio law, RC 3517.01 as appropriately modified by Directive 2007-09, does not severely restrict the rights of any political party. Ohio's election regulations governing party access to the ballot "impose equal obligations on all political parties." *Libertarian Party*, 562 F.3d at 605 (Griffin, J., dissenting). In order to maintain ballot access, all political parties must have their gubernatorial candidate or presidential electors receive 5% of the vote. RC 3517.01(A)(1). If any political party fails to meet that threshold, as the Ohio Libertarian Party did when it previously achieved ballot access, it must submit a petition with the valid signatures of 0.5% of qualified electors within 100 days of the primary election. Therefore, Directive 2007-09 guarantees that any newly established political party will make "'some preliminary showing of a significant modicum of support" before appearing on the ballot." *Schrader*, 241 F.3d at 791 *quoting Jenness*, 403 U.S. at 442.

In this case, the Libertarian Party fails to recognize that the State of Ohio has an important and compelling state interest in requiring that either a political party or that party's candidate show a significant modicum of support before granting access to the ballot. *Id.* By requiring 20,114 signatures 100 days prior to the primary election, Directive 2007-09 demands that a new political party show a modicum of support before it is allowed access to Ohio's ballot. Because *Libertarian Party* recognized that one must look at the combined effect of election laws in determining whether the law violates the constitution, this Court should examine not only the fact that the Ohio Constitution requires all political parties to nominate their candidates by primary and that Directive 2007-09 requires that a petition from a new political party be filed within 100 days of the primary election. Rather, this court should also recognize that the

Secretary reduced the number of signatures that a new political party must obtain by 50%.  When examining all of these factors, the Plaintiffs are unable to meet their heavy burden of proof and show that Ohio's ballot access requirements are unconstitutional.

Directive 2007-09 requires that any new political party obtain valid signatures in the amount of 0.5% of the people who voted for governor in 2006 or 20,114 valid signatures.  On March 4, 2008, Ohio had 7,826,480 registered voters.  According to the Plaintiffs themselves, they were able to generate only 6,545 signatures as of March 3, 2008.  Thus, on the day before the Ohio primary, the Plaintiffs were able to submit purported signatures from 0.08% of the number of people who were registered to vote in this State and only 0.16% of the total number of people who voted for governor in 2006.  The Plaintiffs 6,545 signatures further were not examined by elections officials for authenticity.[2]  In the last statewide petition submission, only approximately 30% of signatures on a petition were actually valid.  Affidavit of Pat Wolfe attached as Exh. A.

Instead of addressing the fact that Ohioans are apparently not interested in joining with the Plaintiffs to form a new political party, the Plaintiffs simply argue that the 100 day requirement to file their party petition is too far away from the general election day.  Although is the Plaintiffs are correct that the Sixth Circuit ruled in *Libertarian Party* that Ohio's former

---

[2]  Under Ohio law, the Secretary of State is prohibited from accepting any petition that, on its face, fails to contain the requisite number of signatures.  Furthermore, once the Secretary receives a petition for a new political party, she must forward the petitions to the appropriate county boards of elections to verify the signatures.  The count boards of elections have a statutory obligation to verify the signatures on the petition and return the petition to the Secretary.  RC 3501.11(K).

requirement that a party file 120 days before the State's primary is unconstitutional, Directive 2007-09 is constitutional because it both shortened the period of time before the primary election when a new party must file its petition as well as lowered the signature requirements. Furthermore, Directive 2007-09 allowed a joint Presidential candidate to have a party identifier next to his name so long the candidate filed a petition with 20,114 signatures within 80 days of the election. Both the Plaintiffs and the *Libertarian Party* decision focused heavily on its belief that early deadlines for political parties are unfair because voters are not focused and uninterested in the campaign. *Libertarian Party*, 462 F.3d at 586; Plaintiffs' motion at 9-10. However, this is simply not true any more.

The lead-up to the 2008 primary election campaign showed that states across the country accelerated their primary and caucus schedule. Ohio's 2008 presidential primary occurred on March 4, 2008. Yet, 42 states or territories held primaries or caucus elections for at least one of the two major national parties *before* Ohio held its presidential primary. 2008 Presidential Primary Dates, Federal Election Commission, attached as Exh. B. The Iowa caucuses were held on January 3, 2008; the Republican caucuses in Wyoming occurred on January 5; and the New Hampshire Primary took place on January 8. In fact, 8 different states held primaries or caucuses for at least one of the major national political parties in January. *Id.* In order to prevent some states from accelerating the calendar up even more, both major political parties even sanctioned several states for holding their primaries "too early." NY Times, GOP plans early primary penalty, Aug. 29, 2007, attached as Exh. C.

Similarly, the American electorate has been very engaged during this election cycle. The official results for the Ohio primaries in March of 2008 show a voter turnout of 46.04%.

http://www.sos.state.oh.us/SOS/elections/electResultsMain/2008ElectionResults/pturnout.aspx

This turnout was a new record for Ohio and was the second highest turnout nationally.  2008 primary falls just short of record, AU News at 1, 18 attached as Exh. D..  Likewise, the national turnout for primaries fell just short of a new record.  *Id.* at 1.  Democratic turnout produced a record in 23 states while Republican turnout produced a record in 10 states.  In addition, Secretary Brunner is predicting that 80% of registered Ohioans will cast a ballot in the November general election.  Ohioans are highly politically engaged.  Thus, if there were any desire among Ohioans to create Libertarian Party, obtaining 20,114 valid signatures by November 26, 2007 is not a severe burden in a year when most every state has moved its primary or caucus in front of Ohio's.

### B.  The State Of Ohio has compelling interests in requiring new political parties to file their petition 100 days before the primary election.

The State of Ohio has numerous compelling interests in requiring a party to file a petition within 100 days of a primary election.[3]  As had been previously demonstrated, each of the signatures on the petition must be reviewed by the local county boards of election.  However, there are preparations that both county boards of elections as well as political parties must follow prior to the primary election.  Starting on December 5, 2007, boards of elections can accept applications for absentee ballots for the March primary.  RC 3509.03, 3511.02.  Likewise, declarations of intent to change political party affiliation must be filed by 4 p.m. On December 5 with those same boards of elections.  RC 3513.191(C)(1)(a).  Local boards of elections must also

---

[3]  Although Directive 2007-09 says that the filing must be within 100 days of the election, since primary election day in Ohio is always a Tuesday, 100 days will always be a Sunday.  By operation of law, the filing will always be at least within 99 days of the election.

certify all questions and issues for the primary election no later than December 20, 2007--

seventy five days before the election.  RC 731.28, .29, 4301.331, .331, .333, .334, 4305.14.  By

December 27, the local boards must verify the sufficiency of local option petitions, RC 3513.05,

and by December 28, statewide initiated statutes must be filed with the Secretary to be referred

to the new year's general assembly.  Ohio Const. Art II Sections 1a and 1b.[4]  Most importantly,

however, is that on January 4, declarations of candidacy for nomination in the primary election

must be filed.  RC 3513.05.

Since the declaration of candidacy in order to run in a primary must be filed by January 4,

it is important to not only give the boards of elections sufficient time to process the petition of a

new political party, but candidates for that party's nomination to various offices must be

processed.  Potential candidates for various offices must know that the new political party will

come into existence so that they can determine if they want to remain in their old parties or join

the new party.  Others who may wish to run for that new party's nomination must also

understand that the new party will legally exist.  Thus, there is a compelling interest for the State

of Ohio to insure that the new party files with sufficient time to allow the party, its possible

candidates, its voters who can first ask for its absentee ballots starting only 10 days after the

party files its petition, the board of elections officials who must process the paperwork, and the

general public to make a decision about joining the new political party.

---

[4] The signatures on a petition for an initiated statute must be verified by the local boards of elections.  In addition, in order to qualify to introduce an initiated statute, the committee must submit valid signatures in the amount equal to 3% of the number of people who voted for governor, or 6 times more than the number of signatures required for a new political party.

Likewise, the State of Ohio has a compelling interest in making sure that any political party that appears on its ballot has a modicum of popular support. *Schrader*, 241 F.3d at 791 *quoting Jenness*, 403 U.S. at 442. Although the Plaintiffs speak in terms of the Libertarian Party's voters and supports, the simple fact is that they have been unable to demonstrate any such support. They have produced no evidence whatsoever there is any interest in establishing a Libertarian Party in Ohio. In a year of record voter turnout and interest, the Libertarian Party was only able to get 6,545 unverified signatures on its petition for new party status. Furthermore, it attempted to file these signatures not on the day as required by Directive 2007-09 but rather on March 3, 2008 -- the day before Ohio's primary. The Plaintiffs do not inform this Court how long it had been attempting to circulate those petitions. The Plaintiffs do not provide those petitions to the Court by way of evidentiary filing so it is impossible to tell whether the Libertarian Party was any more successful in obtaining valid signatures than the last statewide referendum filing which garnered a 30% validity rate. Thus, the Plaintiffs have completely failed to show any modicum of support and cannot, therefore, attack the State's compelling interest in preserving the order of its ballot.

Furthermore, the Plaintiffs have incorrectly concluded that the State does not have an interest in requiring political parties to nominate their candidates via primary. In Ohio, the only way that a person can register as a member of a political party is by voting in a partisan primary. By participating in the primary, the voters have the opportunity to nominate and elect officials of that party such as precinct committee representatives, county committee representatives, and state committee representatives. Furthermore, by participating in partisan primaries, voters become eligible to be nominated by political parties to work as election officials -- commonly

referred to as poll workers.  This also gives the political parties a better understanding of who their supporters are.

Nominees of political parties are also automatically qualify for the ballot.  After submitting a nominating petition, any member of the political party who won the party's nomination for a specific partisan office will automatically qualify for the November election. Any member of the political party who decides not to file a nominating petition can still run as a write-in in the party's primary.  Thus, the primary election enhances democratic values since all members of the political party will have a right to participate in choosing the party's candidates instead of leaving the decision in the hands of a select few.  This is more important when a new political party seeks to establish itself because new members who wish to associate with the party will be able to do so.  The new party's supporters will be able to shape the party by nominating its candidates and will further aid the party in its growth since they will have officially registered as members of the party.

> **D.**     **The United States Constitution does not prohibit the State of Ohio from regulating federal elections.**

The Plaintiffs are incorrect in their assertion that Articles I & II of the United States Constitution prohibit the Secretary from passing regulations concerning federal elections.  None of the cases cited by the Plaintiffs support a finding that a Secretary of State cannot issue regulations concerning federal elections.  For example, the issue in *Bush v. Gore*, 531 U.S. 98 (2000), was simply whether a standardless recount of votes violated the due process or equal protection clause of the Fourteenth Amendment.  Seven justices on the Court answered that question in the affirmative with five justices determining that because the safe harbor period for federal electors was approaching and no recount could be completed before that date, the recount in Florida must stop.  *Id.* at  111.

Furthermore, there is simply nothing in the decision to suggest that a Secretary of State cannot issue directives as it relates to federal elections.  The Rehnquist concurrence cited by the Plaintiffs simply found three votes on the Supreme Court to support the proposition that Florida changed requirements for the appointment of Presidential electors *after* the election was held in violation of 3 U.S.C. 5.  There is nothing in the Rehnquist concurrent which would suggest a duly elected Secretary of State cannot issue directives as it relates to federal elections prior to the election taking place.  That is especially true when the directive was issued in May the year before the federal election.

Likewise, the Plaintiffs' reliance on *Lane v. Coffman*, 127 S. Ct. 1194 (2007) is misplaced.  As the Plaintiffs inform this Court, the Supreme Court was prohibited in reaching the merits of the case because of a lack of standing.  Since the Plaintiffs lacked standing to bring the case, the decisions are advisory and do not serve any precedential value.  Similarly, the Plaintiffs reliance on *Hawke v. Smith*, 253 U.S. 221 (1920), is misplaced.  The issue in *Hawke* was whether a State could allow the voters to determine whether to approve a constitutional amendment.  As the *Hawke* Court noted, Article V of the Constitution provides the methods for a State's ratification of a proposed constitutional amendment.  Nothing in *Hawke* specifies that a duly elected Secretary of State is prohibited from using her power to issue lawful directives even if those directives impact upon the election of federal candidates.

**E.**      **Ohio law gives the Secretary of State ample power to clarify the laws of this State via directive.**

The Ohio General Assembly has specifically given the Secretary of State the authority to issue directives, advisories, and memoranda to Ohio's boards of elections.  RC 3501.01(C).  The Directives have the force of all the boards of election must follow them.  RC 3501.11(P).  Furthermore, the Ohio Supreme Court has found that if a statute is ambiguous, the Secretary's

interpretation is binding not only upon the boards of elections but upon the courts as well.

*Whitman v. Hamilton County Board of Elections*, 97 Ohio St.3d 216 (2002).

Thus, Ohio law grants great discretion to the Secretary of State in order to regulate elections via directive.  Since Directive 2007-09 merely clarified the requirements for a new political party in light of the *Libertarian Party* decision, it was properly issued under the Secretary's broad discretion pursuant to Ohio law.

**F.      Plaintiffs have failed to show that they are entitled to a preliminary injunction.**

Before issuing a motion for preliminary injunction, the Court must examine four separate factors:

(1)    Whether the movant has a "strong" likelihood of success on the merits;

(2)    Whether the movant would otherwise suffer irreparable injury;

(3)    Whether issuance of a preliminary injunction would cause harm to others; and

(4)    Whether the public interest would be served by the issuance of a preliminary injunction.[5]

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc); *Cabot Corp. v. King*, 790 F. Supp 153, 155 (N.D. Ohio 1992).  The standard for granting a preliminary injunction is more "stringent" than that required for summary judgment.  *Leary v.*

---

[5]   Secretary of State Brunner expressly reserves the right during the preliminary injunction hearing and also in a separately filed motion to dismiss and/or motion for summary judgment to expand the scope of both her legal and factual arguments.  Secretary of State Brunner files this memorandum contra on an expedited basis to place on record relevant arguments, both factual and legal, as to why the Plaintiffs' motion for emergency relief should be rejected.

*Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  This is because "the preliminary injunction is an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Id.* (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)) (internal quotations omitted).

As has been previously demonstrated, the Plaintiffs have failed to show any likelihood of success on the merits.  Likewise, the Plaintiffs have failed to meet the other requirements for a preliminary injunction.   Since the Plaintiffs have failed to establish a violation of their constitutional rights, they cannot show any harm in a denial of a preliminary injunction.  *Summit County Democratic Central & Executive Committee v. Blackwell*, 388 F.3d 547 (6th Cir. 2004). Likewise, the granting of an injunction at this stage will harm others.  Candidates for various offices in the State of Ohio needed to determine whether to file to run in legally recognized party primaries or to file paperwork to run as independents for November.  They have already done so. To grant the Libertarian Party ballot access after other candidates made their determinations would greatly harm both those candidates and the general public.  Finally, because an orderly election is in the public's interests, granting an injunction allowing a new political party to participate at this late state would disrupt the process of conducting such an orderly election.

**III.    Conclusion**

For the foregoing reasons, this Court should reject the Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

Nancy H. Rogers
Attorney General


*/s Richard N. Coglianese*
Richard N. Coglianese (0066830)
Damian W. Sikora (0075224)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
614-466-2872
614-728-7592 (Fax)

15

**Certificate of Service**

This is to certify a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on this 30th day of June, 2008.

*/s Richard N. Coglianese*