"One elected to the office of mayor, who fails to take the oath of office before some official authorized to administer oaths, and fails to present his bond to council for approval, as required by statute, but instead thereof appears before the incumbent mayor, who refuses to administer the oath or receive the bond, must be regarded as having refused to accept the office, and a petition in *quo warranto*, praying that the incumbent mayor whose term of office has in the meantime expired be ousted, does not lie and will not be dismissed."

Undoubtedly, under the decision above referred to, if the justice to which you refer had not eventually taken the oath before a proper officer, he could have been ousted. In other words, if the question had been raised by *quo warranto* proceedings before he had properly become qualified, undoubtedly the courts would have declared his office to be vacant. However, the case you present is somewhat distinguished from the Bimeler case above mentioned, for the reason that the justice you mention had undertaken to take an oath, but the officer administering it was not, under the statute, authorized so to do. In the Bimeler case no oath had been taken, and before the error had been corrected, action was instituted to question his title. It has frequently been held that technical defects in qualification at the time office is taken will not disqualify the officer if later the legal requirements are fully met.

Therefore, it would appear that the justice to whom you refer, having undertaken to qualify, and later, upon the discovery of his error as to the authority of a notary to administer oaths, having taken the proper oath of office before a proper officer, he would now be regarded as a *de jure* officer, and there would be no vacancy which could now be filled by appointment.

Based upon the foregoing, it is my opinion that:

1. A notary public is not authorized to administer the oath of office to a justice of the peace, said oath being required to be administered by another justice of the peace or the clerk of courts.

2. Where a duly elected justice erroneously takes the oath of office before a notary public and assumes the duties of his office, he becomes a *de facto* officer and the title to his office can only be questioned by a proceeding in *quo warranto*. The actions of such officer are valid in so far as the status of his office is concerned.

3. If such justice, during the time he is acting in the capacity of such a *de facto* officer, within the term for which he was elected, takes the oath of office before a justice, or the clerk of courts, as required by law, he then becomes a *de jure* officer.

It is believed that a more specific answer to your inquiry is not required.

Respectfully,
GILBERT BETTMAN,
*Attorney General.*

---

1423

1930

ELECTION LAW—AUTHORITY OF SECRETARY OF STATE TO PREPARE RULES AND INSTRUCTIONS FOR CONDUCT OF ELECTIONS—DUTY OF SAID OFFIFCIAL TO PRESCRIBE FORM OF REGISTRATION CARDS, BLANKS AND RECORDS.

*SYLLABUS:*

1. *Under the provision of Section 4785-7, General Code, as enacted by the 88th General Assembly, effective January 1, 1930, whereby the Secretary of State, as chief election officer, is charged with the duty "to prepare rules, regulations and instructions*

05-02-2008 11:05am From-ATT GEN OPINIONS 614-466-0013 T-831 P 003/006 F-277
Case: 2:08-cv-00555-EAS-TPK Doc #: 14 Filed: 07/11/08 Page: 2 of 6 PAGEID #: 133

ATTORNEY GENERAL. 121

:he oath of office
ls to present his
:tead thereof ap-
: the oath or re-
the office, and a
whose term of
will not be dis-

istice to which you
he could have been
arranto proceedings
ts would have de-
5 somewhat distin-
hat the justice you
:tering it was not,
th had been taken,
question his title.
: the time office is
are fully met.
er, having under-
he authority of a
: before a proper
ild be no vacancy

office to a justice
er justice of the

i office before a
:o officer and the
uto. The actions
ied.
such a *de facto*
office before a
*de jure* officer.
quired.

TMAN,
y General.

E TO PRE-
-ECTIONS—
REGISTRA-

I by the 88th
tate, as chief
instructions

*for the conduct of elections*", *the adoption of such rules, regulations and instructions as will carry out the provisions and principles of the election laws of the State of Ohio, and apply and explain the provisions, intent and purpose of such laws in harmony with the rulings of the courts and opinions of the Attorney General, would be within the authority vested in the Secretary of State, so long as the laws were not thereby ampli-fied, and such rules, regulations and instructions should be followed and obeyed by county boards of elections and other election officials in the state.*

2. *The form of registration cards, blanks and records should be provided by the Secretary of State in the rules, regulations and instructions for the conduct of elections which the Secretary of State is authorized and directed to prepare under the pro-visions of Section 4785-7, General Code.*

COLUMBUS, OHIO, January 16, 1930.

HON. CLARENCE J. BROWN, *Secretary of State, Columbus, Ohio.*

DEAR SIR:—Your letter of recent date is as follows:

"I am very desirous of obtaining a legal opinion from you as to your interpretation of the meaning of certain parts of Section 7 of Amended Sub-stitute Senate Bill No. 2, (known as the Election Laws of the State of Ohio,) and becoming effective January 1st, 1930.

Parts of lines 4 and 5 in Section 7 (which fixes the duties of chief election officer) reads 'to prepare rules, regulations and instructions for the conduct of elections.'

The Secretary of State, as Chief Election Officer, is continuously called upon to interpret the meaning of various sections of the election laws and to advise election boards as to their duties, etc., under the various sections of the law. Also to rule upon specific cases and instances submitted, wherein the law, court decisions and Attorney General's opinions do not specifically apply.

I will, therefore, appreciate it if you will inform me as to whether or not the above portion of Section 7 gives to the Secretary of State, as Chief Elec-tion Officer, the power to make such interpretations and rulings on matters not definitely covered by the provisions of the statute or by previously rendered court decisions or Attorney General's opinions. In other words, whether or not the Secretary of State, as Chief Election Officer, has authority and power to amplify the provisions of the election law for the benefit of election offi-cials and electors so long as such rulings and interpretations are not in conflict with the written law or with court or Attorney General's legal decisions and opinions?

I would also be much pleased if you would advise, in case such power is vested in the Secretary of State, as Chief Election Officer, whether or not such interpretations issued by the Secretary of State will have the effect of law until overruled by a higher authority, and whether or not it will be com-pulsory for county boards of elections and other election officials to follow and abide by such interpretations, rulings and regulations until overruled by some higher authority?

Another part of Section 7 (parts of lines 8 and 9) provides as a part of the duties of the Chief Election Officer, to 'recommend to boards of elections the form of registration cards, blanks and records.' I will appreciate very much your opinion of the meaning of this part of Section 7.

Does the word *recommend* mean that the Secretary of State acts only in an advisory capacity, and that it is unnecessary for boards to use such forms, blanks and records as recommended? Or does that portion of the section give

122                                    OPINIONS

the Chief Election Officer the right and power to designate such forms, blanks and records, fixing the specifications for the same, etc., and making it compulsory for county boards of elections to use and provide such forms, blanks and records in compliance with the Chief Election Officer's recommendation and designation, so long as such recommendation and designation does not conflict with the provisions of the statutes, which fixes the content, etc., of such records?

In submitting this last question, we would like to respectfully call to your attention the great advantage of the use of uniform forms, blanks and records throughout the entire state."

It appears to be a well recognized policy of legislative bodies to confer upon administrative boards, tribunals or officials, the authority and duty to make certain rules and regulations for the purpose of carrying out the express provisions of laws which such boards, tribunals or officials must administer. The Ohio Legislature has enacted similar provisions relative to rules and regulations to be adopted by The Industrial Commission, the Public Utilities Commission, boards of health, the State Medical Board, the State Board of Optometry, the State Dental Board, etc. The Congress of the United States has also on numerous occasions conferred similar authority upon officials, commissions and other administrative arms of the federal government. There are innumerable cases and judicial decisions upon questions as to whether or not certain specific rules or regulations made pursuant to such provisions are authorized, and therefore valid. Each case must be finally decided upon its own facts.

Section 4785-7, General Code, 113 O. L. 310, to which you refer, provides in part as follows:

"It shall be the duty of the Secretary of State * * * to prepare rules, regulations and instructions for the conduct of elections; to recommend to boards of elections the form of registration cards, blanks and records; to determine in the manner provided by law, the forms of ballots, the forms of all blanks, cards of instructions, poll books, tally sheets, and certificates of election."

The general duties of the Secretary of State as chief election officer are referred to in the preceding section, being Section 4785-6, General Code, which is as follows:

"The Secretary of State, by virtue of his office, shall be the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in this act. He shall perform these duties, in addition to other duties imposed upon him by law, without additional compensation."

It is difficult and perhaps not possible to lay down a general rule and to say with precision and certainty the exact and absolute extent of authority which is vested in the Secretary of State by the phrase "to prepare rules, regulations and instructions for the conduct of elections." The Legislature has manifestly left to the discretion of the Secretary of State as chief election officer the determination of certain details which it cannot forsee and determine in the administration of the election laws. It has been repeatedly held that the delegation by the Legislature of what may be termed quasi-legislative powers is a valid exercise of the legislative prerogative. In the case of *Miami County* vs. *Dayton*, 96 O. S. 215, the Supreme Court upheld the constitutionality of the Conservancy Act. In speaking of this matter of delegation of quasi-legislative powers, Judge Wanamaker said at p. 234, 235:

"But suppose that the powers so conferred are quasi legislative, it must be conceded they are also quasi administrative and quasi judicial, and in such cases where the twilight zone of distinction prevails it has always been regarded as the right and duty of the Legislature to determine the nature of the function exercised and the body that should exercise it."

Upon this same subject in the case of *State, ex rel.* vs. *Park District,* 120 O. S. 464, reported in Ohio Bar, June 11, 1929, Chief Justice Marshall said at pp. 478, 479:

"In the complexity of our advancing civilization, * * * the Legislature has found it necessary to content itself with declaring the principles governing a general public purpose, and to confer upon existing local officials, or upon local boards to be created in a designated manner, the authority to provide, within definite limitations rules and regulations to execute the general purpose expressed in the law itself."

Such rules and regulations as are provided within the authority and limitations conferred upon public officials or boards and commissions, have been uniformly upheld. It is clearly the intent of the Act that these rules, regulations and instructions are primarily for the government and control of the subordinate election officials in the conduct of elections in accordance with law and, so long as in force and effect and not superseded by higher authority, are binding upon such subordinates in the sense that violations thereof would probably constitute grounds for removal.

In answer to your first question, in my opinion, under the provision of Section 4785-7, General Code, as enacted by the 88th General Assembly, effective January 1, 1930, whereby the Secretary of State, as chief election officer, is charged with the duty "to prepare rules, regulations and instructions for the conduct of elections", the adoption of such rules, regulations and instructions as will carry out the provisions and principles of the election laws of the State of Ohio, and apply and explain the provisions, intent and purpose of such laws in harmony with the rulings of the courts and opinions of the Attorney General, would be within the authority vested in the Secretary of State, so long as the laws were not thereby amplified, and such rules, regulations and instructions should be followed and obeyed by county boards of elections and other election officials in the state.

You next inquire as to the meaning of the word "recommend" as used in Section 4785-7, General Code, supra, wherein it is provided that it shall be the duty of the Secretary of State "to recommend to boards of elections the form of registration cards, blanks and records". Section 4785-42, General Code, provides specifically what the registration forms shall contain and sets forth the substantial form. This section further provides as follows:

"8. Provision shall be made either on the front or back of the registration card or loose leaf pages for recording the fact that registered voters have or have not voted at each general election. Such record shall indicate whether such voter voted at the primary election and his political party affiliations if any. Such facts shall be recorded, *as determined by the rules and regulations of the Secretary of State,* by the precinct officials as the votes are cast." (Italics the writer's.)

The express authority here given to the Secretary of State to determine by rules and regulations the method of recording this information on the registration form is indicative of the fact that the Legislature contemplated that the rules, regulations and instructions for the conduct of elections may extend to the determination

of the form of registration cards, blanks and records. The benefits arising from the use of uniform forms throughout the state are manifest. Although the Legislature used the word "recommend", which word, standing alone, is of limited effect, I am clearly of the view that it is within the authority touched upon in the first part of this opinion, to provide in the rules and regulations the form of registration cards, blanks and records. This same sentence of the section provides that the Secretary of State shall determine * * * the forms of all blanks."

Specifically answering your second question, it is my opinion that the form of registration cards, blanks and records should be provided by the Secretary of State in the rules, regulations and instructions for the conduct of elections which the Secretary of State is authorized and directed to prepare under the provisions of Section 4785-7, General Code.

Respectfully,
GILBERT BETTMAN,
Attorney General.

1424.

INDEPENDENT AGRICULTURAL SOCIETY—MEMBERS RESIDING IN MORE THAN ONE COUNTY—CONTRIBUTIONS FROM COUNTIES FOR JUNIOR CLUB WORK—APPROPRIATIONS BY COUNTY COMMISSIONERS UNDER SECTION 9894, GENERAL CODE—APPORTIONING SUMS AMONG COUNTIES ILLEGAL.

SYLLABUS:

1. *An independent agricultural society organized under the provisions of Section 9880-1 of the General Code, consisting of members residing in more than one county, is entitled to receive contributions from any county in which such society expends not less than one hundred dollars in carrying on junior club work as provided in Section 9880-2. When such work is carried on, each county shall pay the sums therein referred to and there is no provision for apportioning said sums among the counties.*

2. *When such an independent society is properly organized, the county commissioners in a county in which said society holds fairs may contribute to said society in accordance with the provisions of Section 9894 of the General Code. However, there is no provision made for the apportioning of said sums among other counties.*

COLUMBUS, OHIO, January 16, 1930.

*Bureau of Inspection and Supervision of Public Offices, Columbus, Ohio.*

GENTLEMEN:—You have requested my opinion on the following:

"Section 9880-1 of the General Code provides for the establishment of independent agricultural societies and for the payment to such societies by the county of certain sums designated therein. It further provides that if the fair board be residents of more than one county, the auditors of such counties shall draw orders on their respective treasuries for the proportionate share of the sum of $800.00 to be divided according to population of the counties according to the last federal census.

Section 9880-2 of the General Code provides for the payment to any fair organization, either county or independent, of the amount expended in junior club work, not less than $100.00 nor more than $500.00, but does not provide for any division in case the society covers more than one county.



STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
MARC DANN, ATTORNEY GENERAL

Opinions Section
30 E. Broad St., 15th Floor
Columbus, OH 43215-3400
Telephone: (614) 752-6417
Facsimile: (614) 466-0013
www.ag.state.oh.us

# FACSIMILE TRANSMISSION COVER SHEET

**To:** Mark Brown, Professor of Law, Capital University

**From:** Opinions Section

**Re:** Copy of Ohio Attorney General Opinion

**Fax No.:** 236-6956

**Number of Pages (including cover sheet):** 6

**Date/Time Sent:** 5/2/08

If you do not receive any of the pages properly, please contact sender as soon as possible at (614) 752-6417.

**Per your request, attached is a copy of Attorney General Opinion No. 1930, #1423.**

## NOTICE

This is a fax transmission that may contain information that is attorney-client privileged and/or confidential in nature. It is intended only for the use of the individual or entity to which it is addressed. If you have received this communication in error, please notify the sender at the address listed below and <u>destroy this transmittal</u>. If you are not the intended recipient, you are hereby notified that any retention or dissemination of this information is strictly prohibited.