IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LIBERTARIAN PARTY OF OHIO, et al.,

PLAINTIFFS,

v.

CASE NO. C2-08-555
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE NORAH MCCANN KING

JENNIFER BRUNNER, in her
Official Capacity as Ohio
Secretary of State,

DEFENDANT.

## OPINION AND ORDER

This matter came before the Court on Plaintiffs', The Libertarian Party of Ohio, Kevin Knedler, Bob Barr, Wayne A. Root, Mark Noble and Margaret A. Leech (collectively, the "Libertarian Party"), Motion for Preliminary Injunction. (Doc. #6). Plaintiffs are an alternative political party and its candidates for public office in the November, 2008 general election. Defendant is the Ohio Secretary of State. Plaintiffs seek an order directing Defendant to place the Libertarian Party and its candidates on the 2008 general election ballot for the state of Ohio. For the reasons that follow, Plaintiffs' Motion is **GRANTED**.

1

I.

**SUMMARY**

The Libertarian Party of Ohio seeks to have its candidates for President, Vice President, United States House of Representatives and the Ohio General Assembly on the general election ballot in Ohio on November 4, 2008. Two years ago, the Ohio statutes defining the methods of ballot access for minor or third parties were declared unconstitutional in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), a decision which is binding precedent on both the state of Ohio and this Court. Since this decision was issued, the Ohio General Assembly has taken no action to establish ballot access standards for minor political parties, leaving no lawful, statutory criteria to be followed by the Secretary of State or the various Boards of Election of each county.

The Ohio Secretary of State, having sought new legislation in vain, has attempted to remedy those features of Ohio law declared unconstitutional in *Blackwell, supra*. The state of Ohio undoubtedly has the authority to require party candidates for public office to file petitions sufficient in number to demonstrate a modicum of public support; the State also has the authority to require that such petitions are filed well in advance of an election so as to insure an orderly, reliable election. At the same time, the First Amendment to the United States Constitution guarantees a right of association which is violated by onerous access statutes which prevent third parties and candidates from appearing on the ballot.

The Ohio Constitution requires that parties nominate candidates through primaries. Various Ohio statutes establish the dates of primary elections and the time to file candidacy petitions. Within these limited strictures, the Secretary of State of Ohio has attempted

2

to modify the ballot access structure. As described below, under the *Blackwell* analysis, those modifications are still unconstitutional. Further, as to the federal offices of President, Vice President, and the United States House of Representatives, the Constitution requires the state legislatures, not executive officers such as a Secretary of State, to determine the method of elections.

This Court notes that the Secretary of State, within the limited confines of her authority, attempted to bring Ohio election law into compliance with the Constitution, which cannot be said of the Ohio General Assembly. For the reasons that follow, however, the Directive issued by the Secretary of State suffers from the same deficiencies found in *Blackwell* and, as to the federal offices, is in conflict with Articles I and II of the Constitution.

## II.

The facts are not in dispute. Prior to the Sixth Circuit Court of Appeals' decision in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), a party could qualify for the 2008 general election ballot in either one of the two methods. The first method was satisfied if the party candidate for President or Governor received at least five percent of the vote in the preceding election. If the party could not meet this threshold, it could nonetheless qualify if it did the following: 1) obtained valid signatures of Ohio electors equal to at least one percent of the votes cast for governor in the 2006 general election (40,227); 2) filed the signatures and petition on November 5, 2007, 120 days before the March 4, 2008 primary election and 364 days before the November 4, 2008 general election; 3) nominated their candidates at the March 4, 2008 primary election. Ohio Rev. Code §§ 3501.01(F)(3), 3517.021, 3501.01(E).

In *Blackwell*, the Court of Appeals considered the Libertarian Party's challenge to Ohio's ballot access requirements, and held that collectively the statutes created an unconstitutional burden on First Amendment rights. The early filing deadline requiring minor parties to gather 40,227 signatures one year in advance of a general election imposed a "severe burden" that was not "narrowly drawn to advance a state interest of compelling importance." *Blackwell*, 462 F.3d at 593. The Court of Appeals discussed ballot restrictions in other states at length, finding no other states as restrictive as Ohio. Of the seven other states that require political parties to nominate candidates through the primary process, Ohio imposed the most stringent requirements. For example, while California and Mississippi had October and January filing deadlines, respectively, neither state had a signature requirement in presidential election years. *Id.* at 589. The four other primary states have filing deadlines of April or later. *Id.* at n.10.

Considering the entire statutory scheme, the Court held:

> Ohio is well within its authority to mandate primary elections, to limit all parties to one primary date, or to require filing a petition in advance of the primary for administrative purposes. Viewed individually, each of these requirements may only impose a reasonable burden on constitutional rights. In practice, however, the combination of these laws imposes a severe burden on the associational rights of the LPO, its members, and its potential voter-supporters. As the state has not shown that these laws are narrowly tailored to protect a compelling state interest, we find that the Ohio system for minor party qualification violates the First Amendment of the Constitution.

*Blackwell*, 462 F.3d at 595.

Following the Court of Appeals' decision, in the absence of legislation from the Ohio General Assembly enacting new constitutional ballot access procedures, the Ohio Secretary

4

of State issued a Directive dated May 21, 2007. (Directive 2007-09, Doc. #5, Ex. B). The Directive requires a minor political party to: 1) obtain petition signatures equal to one-half of one percent of the votes cast for governor in the 2006 general election (20,114); 2) file nominating petitions 100 days before the primary. For 2008, that date is November 26, 2007, nearly a full year before the November 4, 2008 general election. The Directive left unchanged the requirement that minor parties nominate their candidates by primary election. The Directive contains an additional provision, allowing political parties that do not participate in the primary to be granted party status for the purposes of certifying presidential and vice presidential candidates only, by filing a petition with 20,113 valid signatures by August 18, 2008. (Directive 2007-09).

On March 3, 2008, the Libertarian Party filed with the Secretary of State a petition containing 6,545 signatures. Defendant rejected the petition for failure to comply with the Directive. Plaintiffs filed a Complaint on June 6, 2008, seeking preliminary injunctive relief prohibiting enforcement of Directive 2007-09 and granting the Libertarian Party access to the November, 2008 ballot. Plaintiffs filed a motion for preliminary injunction on June 16. Following completion of the briefing, the Court held oral argument on Plaintiffs' motion on July 14, 2008.

## III.

In considering a request for preliminary injunction, the district court is to consider the following: (1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be

5

advanced by issuing the injunction. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377, 380 (6th Cir. 2006), citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir. 1997). "In making its determination, the district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Id.* The foregoing are "factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985).

### A. *Likelihood of Success on the Merits*

The Court finds that it is likely that Plaintiffs will prevail on the merits of their Constitutional claims. Plaintiffs correctly contend that only the legislative branch has the authority, under Articles I and II of the United States Constitution, to prescribe the manner of electing candidates for federal office. As to the House of Representatives, Article I, Section 4 states that "the Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof. . . ." As to members of the Electoral College who determine the President, Article II, Section 1 states: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors."

To be sure, there is a dirth of precedent regarding the Constitution's above-cited references to the state legislatures. The language of both Articles, however, is not susceptible to more than one interpretation. In this case, the applicable state legislature is the Ohio General Assembly. These constitutional provisions provide for no role on the part of the executive branch of state government as to the election of President or members of the House of Representatives.

6

The Supreme Court undertook a limited analysis of these clauses in *Bush v. Gore*, 531 U.S. 98 (2000).[1] The majority per curiam opinion includes no analysis as to the role of state legislatures under Article II, Section 1. Three of the five justices in the majority joined in a concurring opinion which noted:

> In *McPherson v. Blacker*, 146 U.S. 1 (1892), we explained that Art. II, § 1, cl. 2, "convey[s] the broadest power of determination" and "leaves it to the legislature exclusively to define the method" of appointment. 146 U.S. at 27. A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question.

*Bush*, 531 U.S. at 104. These justices concluded, as an alternative basis for the result reached by the Court, that the role played by the Florida Supreme Court in the recount of votes "infringed upon the legislature's authority" and violated Article II of the Constitution. *Id.* at 114.

The four dissenting justices did not appear to disagree that the Florida legislature had exclusive power under Article II. Instead, Justice Stevens, in a dissent joined by Justices Ginsburg and Breyer, contended that the Florida legislature "intended the Florida Supreme Court to play the same role in Presidential elections that it has historically played in resolving election disputes." *Id.* at 124. According to Justice Stevens, the role of the Florida Supreme Court in interpreting state election laws and resolving dispute issues stemmed from specific authority granted by legislation enacted by the Florida legislature.

Justice Souter, joined by Justices Breyer, Stevens and Ginsburg, framed the issue as "whether the judgment of the state supreme court had displaced the state legislature's

---

[1] The majority opinion appeared to restrict the holding in the case by noting that "our consideration is limited to present circumstances . . . ." *Id.* at 109. This language was used in reference to the equal protection analysis, which is not implicated in this case.

7

provisions for election contests: is the law as declared by the court different from the provisions made by the legislature, to which the national Constitution commits responsibility for determining how each State's Presidential electors are chosen? See U.S. Const., Art. II, § 1, cl. 2." *Id.* at 131.

The seven justices who joined in opinions addressing the authority of the state legislatures under Articles II all recognized the exclusive role given therein. The justices disagreed as to whether the Florida Supreme Court displaced or usurped such legislative authority, an issue not implicated in this case.

In this case, the Directive issued by the Secretary of State does not interpret provisions of legislation or resolve factual disputes arising under Ohio law. Instead, the Directive establishes a new structure for minor party ballot access, a structure not approved by the Ohio legislature. As to federal offices, Article I, Section 4 and Article II, Section 1 vest exclusive power to establish such a structure in the state legislature.

Even if the Ohio General Assembly could delegate its authority to a member of the executive branch, an issue that is not before the Court, there is no evidence that the state legislature has specifically delegated its authority to Defendant to direct the manner in which the state of Ohio votes for Senators and Representatives or selects electors to vote for President. Under the Constitution, the Secretary of State, a member of the executive branch of government, has no authority independent of the Ohio General Assembly to direct the method of the appointment of Presidential electors or federal officials. Absent an express delegation of

8

legislative authority, this Court cannot assume that the Ohio General Assembly intended to vest the Secretary of State with the legislative authority conferred in Article I, Section 4 and Article II, Section 1.

Defendant argues that Directive 2007-09 was a valid exercise of the Secretary of State's statutory authority to "[i]ssue instructions by directives and advisories in accordance with section 3501.053 of the Revised Code to members of the boards as to the proper methods of conducting elections . . . [and] [p]repare rules and instructions for the conduct of elections." Ohio Rev. Code 3501.05(B) and (C). The Secretary of State's authority does not, however, extend to filling a void in Ohio's election law caused by the legislature ignoring a judicial pronouncement declaring a state statute unconstitutional.[2] The general, statutory authority to direct the conduct of electors cannot, as to Articles I and II of the Constitution, serve as a substitute for state legislative action regarding the election of federal officials. Accordingly, the Directive has no effect and cannot be enforced to prevent the Libertarian Party and its federal candidates from appearing on the Ohio general election ballot.

Even assuming that Directive 2007-09 was a valid exercise of Defendant's power to regulate elections, the Directive itself imposes unconstitutional burdens on First Amendment

---

[2] The Directive itself goes far beyond instructing boards of elections in how to conduct elections; it purports to create new law. For example, the provision allowing minor political parties to qualify for party status, for the purposes of designating a presidential and vice presidential candidate only, by filing a petition with 20,113 valid signatures 80 days before the general election bears no resemblance to any existing Ohio election law. Minor party presidential and vice presidential candidates can currently qualify for the ballot by complying with O.R.C. 3505.10(B)(3), which contains a 60 day filing deadline; the filing deadline for independent presidential and vice presidential candidates is 75 days before the general election. Ohio Rev. Code. 3505.10(B). Defendant's directive appears to create a new qualifying procedure, effectively amending Ohio election law by Directive.

9

rights and is invalid as to all Plaintiffs, including Libertarian Party's candidates for both state and federal office. The analysis is identical to that set out in *Blackwell*:

> The Supreme Court has clearly stated that states "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); see also *Storer v. Brown*, 415 U.S. 724, 730 (1974). Thus, voting regulations are not automatically subjected to heightened scrutiny. The Supreme Court has set forth the appropriate analytical framework in *Anderson [v. Celebrezze]*, 460 U.S. 780 [(1983)], and *Burdick v. [Takushi]*, 504 U.S. 428 [(1992)]. First, the court looks at the "character and magnitude of the asserted injury" to petitioner's constitutional rights. *Anderson*, 460 U.S. at 789. The court must then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id*. If petitioner's rights are subjected to "severe" restrictions, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But if the state law imposes only "reasonable, nondiscriminatory restrictions" upon the protected rights, then the interests of the state in regulating elections is "generally sufficient to justify" the restrictions. *Id.* (quoting *Anderson*, 460 U.S. at 788).

*Blackwell*, 462 F.3d at 585-87.

Following the *Anderson/Burdick* framework, this Court must first determine the "character and magnitude of the asserted injury." *Blackwell*, 462 F.3d at 585 (quoting *Anderson*, 460 U.S. at 789. The Libertarian Party challenges the Secretary of State's Directive, moving the filing deadline by 20 days to 100 days before the primary, cutting the signature requirement in half, to .5% of the voters in the last gubernatorial election, and maintaining the primary requirement. For the same reasons the Ohio statute was found to be unconstitutionally

burdensome, the Directive likewise imposes a severe burden on associational rights.[3] The Secretary of State's procedures still impose the most burdensome restrictions of any of the seven states that require political parties to nominate their candidates in the primary election. *See Blackwell*, 462 F.3d at 589 (collecting cases). The collective impact of the Directive's ballot-access requirements imposes a severe burden on the First Amendment rights of the Libertarian Party and its supporters. Any regulation of this First Amendment right must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434.

Defendant has advanced the same arguments to justify the Directive as the State did earlier to justify the statutory scheme declared unconstitutional in *Blackwell*. Specifically, Defendant asserts compelling interests in ensuring that minor parties have a "modicum of support" before gaining access to the ballot, and in allowing sufficient time to process nominating petitions to ensure orderly elections. These justifications fail for the same reasons expressed by the Court of Appeals in *Blackwell*. 462 F.3d at 594. "The deadline in this case serves only to prevent the registration of new political parties unless those parties can mobilize more than a year before the election in which they wish to run. This system serves to protect the two major parties at the expense of political dialogue and free expression, which is not justified, much less compelling." *Id.*

Defendant contends that, due to the groundswell of enthusiasm surrounding primary elections in this presidential election year, the fact that the Libertarian Party could not

---

[3] The requirement that minor parties nominate their candidates through the primary process is constitutional, standing alone. *See Blackwell*, 462 F.3d at 595; *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000); Ohio Const. Art. V, Sec. 7. However, because the Court finds that Ohio's ballot access requirements for minor parties continue to run afoul of the First Amendment, Ohio's entire statutory scheme, as applied to minor parties, is unconstitutional.

11

obtain the requisite number of signatures before the November 26, 2007 deadline proves that "Ohioans are apparently not interested in joining with the Plaintiffs to form a new political party." The limited record in this case does not support such a conclusion. It is undisputed that the Libertarian Party was founded in 1972, has qualified for the Ohio ballot in previous years, and that its presidential candidate, Plaintiff Barr, is on the ballot in 31 other states for the 2008 general election.

No federal court has upheld a ballot restriction requiring minor parties to file party petitions more than eleven months in advance of a general election. Moreover, in 1968, the Supreme Court specifically rejected Ohio's February filing deadline for minor parties to qualify for the November election. The Court held: "Ohio's burdensome procedures, requiring extensive organization and other election activities by a very early date, operate to prevent such a group from ever getting on the ballot. . . ." *Williams v. Rhodes*, 393 U.S. 23 (1968).

Just as the Court of Appeals described the statutory scheme in 2006, "the combination [of the Directive's requirements] imposes a severe burden on the associational rights of the Libertarian Party, its members, and its potential voter-supporters" which is not "narrowly tailored to protect a compelling state interest." *Blackwell*, 462 F.3d at 595. The procedures set out by the Secretary of State's Directive are insufficient to remedy the constitutional deficiencies of Ohio's treatment of minor parties.

## B. Irreparable Harm to the Moving Party

The irreparable harm to Libertarian Party and its candidates is denial of access to the ballot. The Court finds that the violation of Plaintiffs' First Amendment rights constitutes irreparable injury for which injunctive relief is an appropriate remedy.

C.   *Harm to Others and the Public*

Defendant argues that both declared candidates and the general public will be harmed if the Libertarian Party is allowed access to the ballot at this late date. On the contrary, the Sixth Circuit clearly expressed a preference for the "political dialogue and free expression" engendered by the presence of multiple parties on the ballot. *Blackwell*, 462 F.3d at 594. As in *Blackwell*, "the State has made no showing that the voters of Ohio, who are able to cast an effective ballot featuring several independent candidates, would be flummoxed by a ballot featuring multiple political parties." *Id.*

The Court finds that each of the four preliminary injunction factors weighs in favor of Plaintiffs' request for injunction relief.

## IV.

Because the Ohio General Assembly has failed to prescribe constitutional ballot access requirements, the Court looks for guidance to the Sixth Circuit Court of Appeals in *Goldman-Frankie v. Austin*, 727 F.2d 603, 607 (6th Cir. 1984), confronting a recalcitrant Michigan legislature:

> Despite existing legal precedent, particularly *McCarthy v. Austin*, supra, wherein the Michigan scheme was expressly declared unconstitutional for its failure to provide independent candidates for public office with a means of access to the ballot, the Michigan legislature continued to ignore the evolving judicial pronouncements as late as the 1980 presidential election. In that election Gus Hall and Angela Davis, running as independent candidates in Michigan for president and vice-president, respectively, were forced to resort to the federal court to obtain ballot position. *Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980).

> Michigan has, to date, failed to remedy the situation. This Court is therefor compelled to again declare, in absolute terms, that the Michigan election laws, so far as they foreclose independent candidates access to the ballot, are unconstitutional.

To remedy the unconstitutional ballot access procedures in Michigan, the Court of Appeals affirmed the district court's order placing Plaintiff Goldman-Frankie's name on the ballot. As instructed by the Supreme Court in *McCarthy v. Briscoe*, 429 U.S. 1317, 1323 (U.S. 1976), "[i]n determining whether to order a candidate's name added to the ballot as a remedy for a State's denial of access, a court should be sensitive to the State's legitimate interest in preventing "laundry list" ballots that 'discourage voter participation and confuse and frustrate those who do participate.'" *Quoting Lubin v. Panish*, 415 U.S. 709, 715 (1974). But where a state has unconstitutionally prevented a party or a candidate from accessing the ballot, "a court may properly look to available evidence or to matters subject to judicial notice to determine whether there is reason to assume the requisite community support." *See McCarthy v. Briscoe*, 429 U.S. at 1323.

The Constitution gives the Ohio legislature significant discretion to establish election procedures. After the state statute was held to fall outside "the boundaries established by the Constitution," the legislature failed to act. *Blackwell*, 462 F.3d at 595. The Court will not prescribe Constitutional election procedures for the state, but in the absence of constitutional, ballot access standards, when the "available evidence" establishes that the party has "the requisite community support," this Court is required to order that the candidates be placed on the ballot. *McCarthy*, 429 U.S. at 1323. As set out above, the Court finds that the Libertarian Party has the requisite community support to be placed on the ballot in the state of Ohio.

14

## V.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction (Doc. #6), and **ORDERS** that Plaintiffs be placed on the 2008 general election ballot for the state of Ohio, and that the individual plaintiffs be identified as candidates of the Libertarian Party of Ohio.

This Order shall be stayed for a period of ten (10) days, permitting the Defendant to pursue expedited review by the Court of Appeals for the Sixth Circuit.

**IT IS SO ORDERED.**

7-17-2008
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

15